# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

| | |
|---|---|
| CHRISTOPHER MILLER,<br>        Plaintiff<br><br>vs<br><br>WILSON COUNTY, TENNESSEE, LISA COLTOGIRONE, MICHAEL COLTOGIRONE, FELICIA HALE, AND CHARLES HUBNER,<br>        Defendants | Case No.<br><br>Hon.<br><br><br>**JURY DEMAND** |

## COMPLAINT

Plaintiff, for his complaint against Defendants, states as follows;

## INTRODUCTION

This action is brought by Plaintiff pursuant to 42 U.S.C. §1983, Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq*., and the common and statutory laws of the State of Tennessee to redress the violation by Defendants of Plaintiff's rights secured by the First and Fourteenth Amendments to the United States Constitution and applicable provisions of Tennessee State law.

## JURISDICTION AND VENUE

1.    This Court has jurisdiction under 28 U.S.C. § 1331 to hear Plaintiff's claims arising under the Constitution and laws of the United States and under 28 U.S.C. § 1343 to hear Plaintiff's claims to recover damages and to secure equitable relief under any Act of Congress providing for the protection of civil rights.

2.    Venue is appropriate in the Middle District of Tennessee under 28 U.S.C. § 1391(b)(1) as

Case 3:22-cv-00118   Document 1   Filed 02/22/22   Page 1 of 35 PageID #: 1

this is the judicial district where the defendants are found. Venue is also appropriate under 28 U.S.C. 1391(b)(2) as this is the judicial district in which a substantial part of the events or omissions giving rise to this claim occurred.

3. This Court has supplemental jurisdiction over state law claims under 28 U.S.C. §1367 in that they involve a common nucleus of operative facts with the federal claims and because the claims are so related to the claims within the Court's original jurisdiction that they form part of the same case or controversy under Article 3 of the U.S. Constitution.

**PARTIES**

4. Plaintiff is a resident of Wilson County, Tennessee, and is employed as a Judicial Commissioner appointed by the County Commission of Wilson County to a four-year term ending in March, 2022.

5. Defendant Wilson County, Tennessee is a political subdivision of the State of Tennessee.

6. Defendant Lisa Coltogirone, also known as Lisa Hardy, was at all relevant times, and remains to this day, the "Director" of Judicial Commissioners for Wilson County, Tennessee, even though no such position exists under State law. Lisa Coltogirone is named in her individual capacity.

7. Defendant Michael Coltogirone is a private citizen and resident of Wilson County, Tennessee, and is not employed by Wilson County and is the husband of Defendant Lisa Coltogirone. By being a willful participant in joint action with county officials during the times relevant to this complaint, Michael Coltogirone was acting under color of law. Michael Coltogirone is named in his individual capacity.

8. Defendant Felicia Hale, was at all relevant times, and remains to this day, the "Deputy

2

Director" of Judicial Commissioners for Wilson County, Tennessee, even though no such position exists under State law. Felicia Hale is also the owner and operator of "Felicia's Chest of Jewels", a sole proprietorship which sells jewelry through Facebook and also acts as an agent of Wilson County to advertise judicial commissioner job vacancies. Felicia Hale is named in her individual capacity.

9.  Defendant Charles Hubner is a private citizen and resident of Wilson County, Tennessee, and is not employed by Wilson County. Charles Hubner is also the owner and operator of Professional Property Maintenance, LLC, a/k/a, Charlie Hubner Property Maintenance, located in Lebanon, Tennessee. By being a willful participant in joint action with county officials during the times relevant to this complaint, Charles Hubner was acting under color of law. Charles Hubner is named in his individual capacity.

## GENERAL ALLEGATIONS

10. Plaintiff was appointed as a Judicial Commissioner of Wilson County, Tennessee for the first time on or about September, 2017, to finish out the term of another judicial commissioner whose term expired in February, 2018. This appointment was pursuant to T.C.A. 40-1-111(a)(1)(B)(i). The appointment was recommended by the Wilson County Judicial Committee and approved by the entire County Commission.

11. Pursuant to Tennessee law, the "chief legislative body of" Wilson County established the term for appointed judicial commissioners as four years. At the end of which term the judicial commissioner could be considered for another four-year term.

12. After serving his first partial term as a Judicial Commissioner with distinction, Plaintiff was recommended by the Wilson County Judicial Committee and reappointed by the

3

County Commission for a subsequent four-year term ending at the end of February, 2022.

13. From his initial appointment and throughout his tenure, Plaintiff served as a Judicial Commissioner with distinction and was never disciplined or otherwise reprimanded for his performance as a judicial commissioner.

14. As a judicial commissioner, Plaintiff held the following duties in accordance with T.C.A. 40-1-111(a)(1)(A)(i-v):

   a. Issuance of search warrants and felony arrest warrants upon a finding of probable cause and pursuant to requests from on-duty law enforcement officers and in accordance with the procedures outlined in chapters 5 and 6 of Title 40 of the Tennessee Code;

   b. Issuance of mittimus following compliance with the procedures prescribed by T.C.A. § 40-5-103;

   c. Appointing of attorneys for indigent defendants in accordance with applicable law and guidelines established by the presiding general sessions judge of the county;

   d. Setting and approving of bonds and the release on recognizance of defendants in accordance with applicable law and guidelines established by the presiding general sessions judge of the county; and

   e. Issuance of injunctions and other appropriate orders as designated by the general sessions judges in cases of alleged domestic violence.

15. In accordance with T.C.A. 40-1-111(a)(1)(B)(i), the "legislative body of any county to which this subdivision (a)(1)(B)(i) applies, in appointing, evaluating and making decisions relative to retention and reappointment, shall take into consideration views,

4

comments and suggestions of the judges of the courts in which the judicial
commissioners are appointed to serve."

    a.    T.C.A. 40-1-111(a)(1)(B)(i) applies to "any county having a population of less
than two hundred thousand (200,000) ... according to the 1970 federal census or
any subsequent federal census."

    b.    Wilson County had a population of 147,737 per the 2020 federal census according
to the Certified Population of Tennessee Incorporated Municipalities and Counties
published by the Tennessee Department of Economic and Community
Development, Center for Economic Research in Tennessee, dated August 26,
2021.

16.    In accordance with T.C.A. 40-1-111(a)(1)(D)(ii), on an annual basis, "the county
legislative body shall conduct a public hearing to examine and evaluate the program of
judicial commissioners and to determine if the program is being conducted in accordance
with law and is contributing to the orderly, effective and fair administration of justice. As
a part of the public hearing the county legislative body shall examine the effectiveness of
the system of judicial commissioners and hear the opinions of the public concerning the
system. The county legislative body shall give notice of the public hearing at least thirty
(30) days prior to the meeting."

    a.    By mandating that all counties must take into consideration the views of others
and must conduct public hearings regarding the judicial commissioner program,
the State of Tennessee has written into the law that speech regarding the judicial
commissioner program, the program's conduct, whether it is complaint with the

5

law, and whether it contributes to the effective and fair administration of justice, constitutes speech on a matter of public concern.

17. In accordance with T.C.A. 40-1-111(a)(1)(D)(iii), following the public hearing and "not later than April 1 of each year, the county legislative body shall cause to be submitted to the judges of the general sessions criminal court of the county, the chair of the judiciary committee of the senate and the chair of the criminal justice committee of the house of representatives a written report setting forth findings and the overall evaluation of the use of judicial commissioners."

    a.    Wilson County has never submitted such written reports.

18. As a Wilson County Judicial Commissioner, Plaintiff was compensated from the general fund of Wilson County in an amount determined by the County Commission, in accordance with T.C.A. 40-1-111(a)(2).

19. Defendant Lisa Coltogirone was appointed on or about February 22, 2021 as the "Director of Judicial Commissioners" by the full County Commission even though no such position as "Director" exists under Tennessee law. The County Commission appointed her on a voice vote and there was no discussion of what, exactly, the duties or authority of the "Director" would be.

20. Lisa Coltogirone has claimed that she graduated from Washburn School of Law and that she is licensed to practice law in Missouri, Maryland, and Tennessee.

    a.    However, the Tennessee Board of Professional Responsibility does not list Lisa Coltogirone. (See, https://www.tbpr.org/for-the-public/online-attorney-directory.) However, it does have a Lisa Lynn Hardy, believed to be one and the same as Lisa

6

Coltogirone, listed as "inactive" since February 4, 2020 and with a registered address in Cumberland, Maryland.

b.    The Official Missouri Directory of Lawyers does not list her as a licensed attorney under Coltogirone or Hardy. (See, https://mobar.org/site/content/For-the-Public/Lawyer_Directory.aspx.)

c.    The Maryland Attorney Listing also does not list her as a licensed attorney under Coltogirone. (See, https://www.mdcourts.gov/lawyers/attylist.) However, it does list a Lisa Lynn Hardy as active and practicing as "The Law Offices of Lisa L. Hardy" with a registered office at 725 Park St., #296, Cumberland, MD. That address, however, is to The UPS Store in a strip mall. The listed phone number goes to a voice mail box that is full and no longer able to receive messages.

d.    The Washburn School of Law, located in Topeka, Kansas, has no record of any student named Coltogirone attending the school. However, it does have a record of a Lisa Hardy attending.

21.    Despite not being licensed to practice law in Tennessee, Lisa Coltogirone regularly dispenses legal advice to other Wilson County judicial commissioners.

22.    On or about February 23, 2021, Lisa Coltogirone circulated an email or other form of communication to all judicial commissioners implementing various policies, including the directive that certain offenses mandated a "MINIMUM bond ... If a judge sees fit to reduce the bail he will." (Emphasis in original.) There is no provision in State law that allows a "minimum" bail or bond based on the charged offense alone.

23.    On March 19, 2021, Lisa Coltogirone held a meeting with judicial commissioners where

7

she stated a new office policy prohibiting judicial commissioners from posting on social media and her expectation that all judicial commissioners will follow a "chain of command". Lisa Coltogirone directed that any problems in the office must go through the "director" (meaning her) and that "every issue goes through the director first". She specifically prohibited any judicial commissioner from communicating with the District Attorney (an elected official) for advice.

24.    Lisa Coltogirone, at the March 19 meeting, recounted how someone had contacted the Tennessee Comptroller's office about her "predecessor", Randy Hankins, suggesting that he was committing fraud. (Hankins ultimately resigned on August 25, 2020 after the Comptroller found he had received pay by falsely reporting hundreds of hours he did not actually work.) Lisa Coltogirone told everyone present at the meeting that no one was going to call the Comptroller's office or the Administrative Office of the Courts on her and adamantly instructed that no one was to call the District Attorney's office (an elected official), any County Commissioner (all elected officials), or anyone on the Judicial Committee (all elected officials) about anything related to the judicial commissioner's office. Lisa Coltogirone threatened that if anyone disobeyed this directive, they would be "written up".

25.    Plaintiff and another judicial commissioner, Stacey Swindle, were both reprimanded for contacting the District Attorney's office about work related matters.

26.    The threat of being "written up" or disciplined also chilled Plaintiff from communicating with his elected officials about work-related matters that were of public concern as is his right under the Tennessee Public Employee's Political Freedom Act and the First

Amendment to the U.S. Constitution.

27.    In a memo dated April 10, 2021, Lisa Coltogirone reiterated what she had said at the March 19, 2021 staff meeting. Specifically, she reiterated about judicial commissioners following the "chain of command" and that, during the March meeting,

> a very specific issue was discussed in detail that involved Commissioners calling other agencies about issues, specifically the District Attorneys [sic] Office for opinions and advice. I adamantly directed that the chain of command is to be followed regarding all issues within the office. Commissioners were directed that under no circumstances were they to pick up the phone and [call] the District Attorneys [sic] office for opinions and advice. The conflict of interest and the different branches of government served by the District Attorneys [sic] Office and the Judicial Commissioners Office was fully explained at the meeting. A clear directive was issued regarding the matter.

28.    The memo went on to describe an incident whereby Judicial Commissioner Swindell had called the District Attorney's office (an elected official) to inquire about an issue "despite the previous training and instruction provided on the issue.... Commissioner Swindell clearly violated the chain of command policy established for the Office, and violated a directive amounting both resulting [sic] in direct insubordination."

29.    Judicial Commissioner Swindell, because of her attempt to contact an elected official about a work related matter, was reprimanded on April 10, 2021 for "insubordination" and placed on 90 days probation by Lisa Coltogirone.

30.    Other judicial commissioners, including Plaintiff, received the April 10, 2021 memo where it explained that Stacey Swindell had been put on probation for insubordination and took it as a threat of discipline should they attempt to contact anyone outside the judicial commissioners office, including elected officials.

9

31.     In a telephone call with former Judicial Commissioner Pat Hamblin, Wilson County

        Mayor Randall Hutto, an elected official, stated that he does not "govern your office from

        here... Simply because it's supposed to be set autonomous to where the judges, or me, or

        the sheriff don't control you all. That's why you don't have any oversight, really, there

        from any of us. So, I don't really have anything to do with your office or tell you you can,

        or can't, or all that stuff. I'm really kind of detached from your office by way of the law,

        [County Attorney] Mike Jennings says."

32.     In effect, Mayor Hutto was saying all authority to hire, fire, or discipline judicial

        commissioners and to make decisions regarding that office had been delegated to Lisa

        Coltogirone.

33.     John Gentry, another County Commissioner and elected official, has stated that Lisa

        Coltogirone had exclusive decision-making authority over judicial commissioners by

        writing to Plaintiff on November 15, 2021, that the "office policy is at the discretion of

        the director of the judicial commission office or her assistant."

        a.      The "assistant" County Commissioner Gentry was referring to was Felicia Hale,

                who holds the title of "Assistant Director" or "Deputy Director" even though no

                such title or office is authorized by state law.

34.     Between February 22 and February 25, 2021, Lisa Coltogirone would use what Plaintiff

        considered seductive body positions while speaking to him in the office that made him

        uncomfortable. These included leaning over his desk and revealing cleavage, violating his

        personal space, and putting her arm across the back of his chair.

35.     Then, on or about March 2, 2021, Lisa Coltogirone stood at the end of his desk, hiked her

leg up onto a chair while wearing a dress and exposed her groin area to the plaintiff who was seated.

36. On March 3, 2021, Plaintiff confronted Lisa Coltogirone about her conduct and told her that her actions made him uncomfortable, that he would not ride in her vehicle with her without another escort, and that he would not attend any meetings, conferences, or dinners unescorted.

37. On March 23, 2021, Lisa Coltogirone told Plaintiff that he was not to go behind her back and "pick up the phone" to call the district attorney (an elected official) for advice. Lisa Coltogirone stated, "If you want advice, I'm it." Lisa Coltogirone emphasized that "I don't like that", referring to when judicial commissioners pick up the phone and call elected officials. She also said that when people talk behind her back, "the next time there's going to be a write-up. I'm not going to tolerate it."

38. On or about April 11, 2021, Lisa Coltogirone sent a message to all judicial commissioners that it had "been brought to [her] attention that some Commissioners appear to be picking and choosing which polices and directives to follow. Please be clear, my directives are not discretionary or optional. If you choose to disregard policies and rules a written reprimand will be issued from this point forward... [Y]ou are required to follow ALL directives, policies and procedures at ALL times."

39. On or about May 27, 2021, Plaintiff complained to William Glover, a county commissioner, and Bethany Massey, the Assistant Human Resources Director, about sexual harassment, general harassment, hostile/violent workplace and other issues regarding Lisa Coltogirone. The complaint included the groin-exposing incident.

11

40. On June 2, 2021, Bethany Massey wrote Plaintiff to say she was sending the details of his complaint to the mayor, Randall Hutto, and to the County Attorney, Mike Jennings.

41. On June 7, 2021, Plaintiff was notified by Bethany Massey that Mike Jennings was going to refer the complaint to the judicial committee to get someone from outside the department to investigate.

42. On July 12, Plaintiff was interviewed by Angelita Fisher, an attorney hired by Wilson County to investigate allegations of sexual harassment raised against Lisa Coltogirone.

    a. Lisa Coltogirone had known Plaintiff was scheduled to meet with and be interviewed by Angelita Fisher.

    b. On August 4, 2021, Angelita Fisher reported to Wilson County that Lisa Coltogirone had admitted to her in an interview that she had told judicial commissioners that they should come to her instead of calling the district attorney (an elected official) or other departments and that calling the district attorney would be considered insubordination and could result in disciplinary action.

43. Fellow judicial commissioner Stacey Swindell had also been interviewed by Angelita Fisher on July 13, 2021. After her interview, Lisa Coltogirone pressured her to say how the interview went. This made Swindell uncomfortable but she was afraid to report this inquiry by Lisa Coltogirone because she did not want to lose her job.

44. On or about August 4, 2021, Plaintiff complained to Bethany Massey, Qiana Scruggs, and William Glover about Lisa Coltogirone becoming "more and more aggressive" towards him. When he arrived at work, Lisa Coltogirone belittled him in front of another judicial commissioner and a Mt. Juliet police officer in a loud, aggressive and demeaning manner.

12

Scruggs responded the next day that "I will forward this information to the person handling your complaint."

45. On August 8, 2021, Plaintiff emailed William Glover and County Attorney Mike Jennings about the status of the investigation regarding his complaints about Lisa Coltogirone. Neither one responded.

46. On August 11, 2021, Plaintiff emailed William Glover and County Attorney Mike Jennings again asking for a status update.

47. On or about August 24, 2021, the Chair of the Judiciary Committee, William Glover, contacted Plaintiff to tell him they were going to have a meeting to discuss the investigation into his complaint.

48. Plaintiff received a letter, dated August 25, 2021, from County Attorney Mike Jennings stating that the attorney hired to investigate his complaint, Anglita Fisher, had issued her report where she stated "I have found no evidence of unlawful harassment or retaliation." The letter further stated that Fisher's report had been presented to the Judicial Committee the day before, August 24, 2021, in an open, public meeting, and the committee voted to accept the report, and the matter "is now concluded". A copy of Fisher's report was not provided to Plaintiff.

49. On August 26, 2021, Plaintiff filed a Charge of Discrimination with the EEOC. That investigation is still pending.

50. After Plaintiff complained about Lisa Coltogirone to Wilson County officials, after participating in the investigation headed by Anglita Fisher, and after filing a Charge of Discrimination with the EEOC, Lisa Coltogirone accelerated and increased her retaliatory

13

harassment against the plaintiff.

a.  Lisa Coltogirone moved Plaintiff's schedule to third shift (10 pm to 6 am) and made his schedule so that he would not have any consecutive days off. Other judicial commissioners were scheduled with consecutive days off. Before Plaintiff's complaints, his schedule reflected consecutive days off and his shift would be 2 pm to 10 pm.

b.  Judicial Commissioner Malvina Dye was scheduled for 6 pm to 2 am. She preferred Plaintiff's 10 pm to 6 am shift and Plaintiff preferred Dye's shift. On or about October 8, 2021, Dye and Plaintiff asked to swap their shifts for October 25 and October 26. Despite the swap having no effect on the availability of judicial commissioners, Lisa Coltogirone stated, without explanation, that there "are no schedule changes permitted at this time." When Plaintiff inquired why "a schedule change is not permitted" and that such swaps had previously been allowed, Lisa Coltogirone did not respond. At a subsequent meeting held on October 18, 2021, Plaintiff's scheduled day off, Lisa Coltogirone stated that all her meetings were mandatory, that she would not hold meetings on another shift to accommodate anyone, and that she would not explain herself to anyone on why she will not approve any schedule swaps. At that point, Plaintiff had been on night shift for the third month in a row where before, such shifts were rotational.

51.  Lisa Coltogirone placed cameras throughout the judicial commissioners office, including cameras that could view the restroom doors. These cameras send live feeds that are viewable only on Lisa Coltogirone's private cell phone. Despite Lisa Coltogirone having

14

access to recording video, on August 25, 2021, she implemented a "policy" that "**<u>ANY</u>** audio, video or photography of any co-worker, law enforcement officer, private citizen or any other governmental employee is **STRICTLY PROHIBITED**. Everyone within the Office of Judicial Commissioner is entitled to a reasonable expectation of privacy <u>at all times</u> in the workplace. Violations of this policy **<u>WILL</u>** result in disciplinary action."

52.     On or about November 15, 2021, Plaintiff emailed several Wilson County elected officials, including the mayor, and members of the Judicial Committee.

a.     There are a few matters of public concern and Officer safety issues inside the Judicial Commissioners Office. The public is being turned away when requesting an Order of Protection petition and to return on a scheduled time to meet with the "Order of Protection Commissioner- Commissioner Lakeisha Davis". Several citizens have complained that they have to return to the county when attempting to flee a dangerous situation. Citizens have had to schedule appointments at times three days out to wait for the "Order of Protection Commissioner" to return from days off.  Officers have been directed by Director Lisa Coltogirone and Deputy Director Felicia Hale not to operate their body worn cameras inside the Judicial Commissioners Office. Officers have stated this directly violates their departments policy and is a matter of Officer safety. If an officer is speaking with an individual in our lobby or inside the "Officers Room" inside our office, the officer is not allowed to record that interaction with the citizen. Director Coltogirone and Deputy Director Hale has barred doors and installed locks on emergency exit doors inside the old Highland Heights Church of Christ building.

15

There is not an emergency exit plan or route. There are fire hazards in the break room where appliances are plugged into power strips. The lobby doors are controlled electronically and I don't know if we have an power issue or a fire if the public will be able to exit the lobby. The carpet is cut up in the hallway and is a trip hazard for the public. Employees do not have access to enter and exit the building during their shift.

53. Mayor Hutto read the email and said he would forward it to the chair of the Judiciary Committee, William Glover.

54. Commissioner Gentry asked Plaintiff for proof that citizens were being turned away while stating that the "office policy is at the discretion of the director of the judicial commission office or her assistant." Plaintiff provided the proof in the form of an email from Lisa Coltogirone.

55. On or about January 3, 2022, Felicia Hale, during her regular working hours as a judicial commissioner, and Michael Coltogirone (Lisa Coltogirone's husband), parked at a private residence without that homeowner's consent, in a silver pickup truck registered to Michael Coltogirone.

56. The private residence was across the street from another residence that was listed for sale.

57. Felicia Hale, and/or Michael Coltogirone, and/or others acting in concert with them, caused another person, Defendant Charles Hubner, to falsely pose as an interested buyer who, using a false name, contacted Plaintiff (who is also a real estate agent) asking him to be a buyer's agent for him to view the property listed for sale.

58. Defendant Charles Hubner was not really interested in purchasing the listed property nor

16

would he have been able to afford the listed property. Charles Hubner obtained access to the listed property by fraud.

59. Michael Coltogirone then climbed into an adjacent tree and started video recording the listed property.

60. When the listed property's homeowner noticed Hale in a vehicle across his home that had been parked there for quite some time, he approached Hale and asked her to lower her window but Hale refused. The homeowner then demanded that Michael Coltogirone get out of the tree. When Michael Coltogirone was asked who he was and why he was in the tree, he responded that he did not have to tell the homeowner anything.

61. Hale then falsely told the homeowner that she was the next person scheduled to view the listed property and said Phyliss Webb was her agent. Webb is a co-worker of Hale at the Wilson County Fair Board who is also a real estate agent. However, when Webb was contacted to confirm, she denied that she was Hale's agent.

62. Hale then contacted the homeowner's agent to apologize for her conduct and said her purpose was to catch Plaintiff working when she thought Plaintiff should not have been working.

63. The next day, the homeowner complained to Mayor Hutto who refused to get involved and referred him to the Sheriff's Department. The homeowner then went to the Sheriff's Department where Deputy Nycole Vaughn told him they would not get involved because Lisa Coltogirone was involved and referred him to the district attorney's office.

64. Wilson County Sheriff's Office Chief Deputy Mike Owen then called Plaintiff and said they would not get involved because of the lawsuit already filed in the case of *Pat*

17

*Hamblin v Wilson County, et al.* and that he would refer it to the district attorney's office.

65.    The actions of Felicia Hale, Michael Coltogirone, and others acting in concert with them, were potentially criminal acts and intentional torts:

    a.    T.C.A. 39-16-301(a) states that a person "commits criminal impersonation who, with intent to injure or defraud another person.. Assumes a false identity."

    b.    T.C.A. 39-16-402(a) states that a "public servant commits an offense who, with intent to ... harm another, intentionally or knowingly .. Commits an act under color of office or employment that exceeds the public servant's official power."

    c.    T.C.A. 39-14-405 states that a "person commits criminal trespass if the person enters or remains on property ... without the consent of the owner."

    d.    T.C.A. 39-11-402 states that a "person is criminally responsible for an offense by the conduct of another, if .. Acting with the intent to ... assist the commission of the offense, ... the person ... aids, or attempts to aid another person to commit the offense".

    e.    T.C.A. 39-12-103 states that the "offense of conspiracy is committed if two (2) or more people, each having the culpable mental state required for the offense that is the object of the conspiracy, and each acting for the purpose of promoting or facilitating commission of an offense, agree that one (1) or more of them will engage in conduct that constitutes the offense."

    f.    The common law tort of trespass to real property is the intentional entry onto the land of another, an act that violates a property right, such as by fraud or false pretenses. Common law civil conspiracy is where two or more persons, each

18

having the intent and knowledge of the others' intent, accomplish by concert an unlawful purpose, such as trespass to real property by fraud or false pretense.

66. On or about January 11, 2022, Lisa Coltogirone, although she had already decided to not recommend Plaintiff for reappointment as a judicial commissioner and whose term would automatically expire at the end of February, 2022, filed an ethical complaint against Plaintiff with the Tennessee Board of Judicial Conduct specifically for making an allegation of sexual harassment against her with the EEOC. This was another retaliatory act against Plaintiff and an attempt to intimidate and harass him.

67. On January 24, 2022, the Judiciary Committee met to consider new judicial commissioners recommended by Lisa Coltogirone. Toward the end of the meeting, one committee member stated that "the county commission is out of it once they're appointed." Mike Jennings, the County Attorney, responded, "that's correct".

68. On January 27, 2022, the full County Commission met to, in part, consider new appointments for and re-appointments of judicial commissioners. Defendant Lisa Coltogirone "recommended" one then-part-time judicial commissioner for appointment to full-time and the hiring of two new part-time judicial commissioners.

    a.    Greg Walsh was introduced as a part-time judicial commissioner applicant.

    b.    Kevin Delong was introduced as a part-time judicial commissioner applicant.

69. While both Walsh and Delong were introduced by Lisa Coltogirone as having years of law enforcement experience and having been recommended for hire by the Judicial Committee, there were no other details offered regarding either one. Of particular relevance, Lisa Coltogirone failed to disclose that neither applicant had any experience

19

independently determining probable cause as a quasi-judicial official or that Delong had a criminal record, specifically, he was convicted of misdemeanor battery in Illinois.

70. Lisa Coltogirone knew of Delong's criminal conviction because Delong told her about it.

71. Defendant Lisa Coltogirone did not recommend Plaintiff for re-appointment.

72. Defendant Lisa Coltogirone did not recommend Malvina Dye, a then-current judicial commissioner, for re-appointment. Malvina Dye had lodged complaints about Lisa Coltogirone with Wilson County elected officials, including at least one member of the Judicial Committee and the County Commission. Malvina Dye had also notified the Wilson County Fire Marshal about Lisa Coltogirone unlawfully locking emergency exits.

73. Defendant Lisa Coltogirone recommended Stacey Swindell, a current judicial commissioner for re-appointment but recommended that the re-appointment be for only one year instead of the customary and historical four years. Stacy Swindell had not filed a charge of discrimination with the EEOC nor had she filed a lawsuit even though she had previously illegally been reprimanded for contacting an elected official about a matter of public concern.

    a.    Stacey Swindell is eligible for life-time health insurance after serving two more years in county government. Had she been re-appointed for the customary four-year term, she could not be removed from office except via an ouster suit. By re-appointing her for only one year, a reappointment period never used before, Lisa Coltogirone can more easily discourage her from bringing any claims against her or from participating in claims brought by others.

74. The part-time judicial commissioner who was appointed to a full-time position did not

want to be moved to full-time and had far less experience as a judicial commissioner than did the plaintiff.

75.   At the January 27, 2022 County Commission meeting, there was no discussion before a unanimous vote on the judicial commissioner appointments (and non-renewals) recommended by Lisa Coltogirone.

76.   At the January 27, 2022 County Commission meeting and before any decision on the appointment or reappointment of judicial commissioners, Wilson County did not consideration views, comments and suggestions of the judges of the courts in which the judicial commissioners are appointed to serve in accordance with and as required by T.C.A. 40-1-111(a)(1)(B)(i).

77.   At the January 27, 2022 County Commission meeting and before any decision on the appointment or reappointment of judicial commissioners, Wilson County did not conduct a public hearing to examine and evaluate the program of judicial commissioners and to determine if the program was being conducted in accordance with law and was contributing to the orderly, effective and fair administration of justice nor did it actually examine the effectiveness of the system of judicial commissioners and hear the opinions of the public concerning the system, all in accordance with and as required by T.C.A. 40-1-111(a)(1)(D)(ii).

78.   At the time of the January 27, 2022 County Commission meeting, all county commissioners were aware that Plaintiff had filed a Charge of Discrimination with the EEOC raising allegations of unlawfulness and misconduct by Lisa Coltogirone.

79.   Lisa Coltogirone has also repeatedly interfered by attempting to intimidate witnesses that

may have information relevant to the charge of discrimination filed with the EEOC.

a.  On or about November 17, 2021, Felicia Hale, the "deputy judicial commissioner", approached Stacy Swindell and informed her that "they" knew she was the "source" of information in the office alleged in a federal lawsuit filed by another judicial commissioner, Pat Hamblin, and that she was specifically named in the lawsuit. Hale encouraged Swindell to destroy evidence by saying that the best thing to do would be to delete her Facebook page and emails. Hale told Swindell that everyone's phone, text, and emails would be subpoenaed and that the case could drag on until 2024. When Swindell asked if she would be re-appointed before then, Hale shrugged and said "maybe" and walked off.

b.  Instead of reappointing Stacy Swindell for the usual and customary four-year term, Lisa Coltogirone recommended her for only a one-year reappointment term knowing this was one year less than a milestone Swindell needed to reach to attain lifetime insurance as a county employee.

c.  On or about November 17, 2021, Felicia Hale, the "deputy director", verbally reprimanded Judicial Commissioner Malvina Dye for posting on her personal Facebook, talking about religion at work, and for how she (Dye) speaks to "the director", meaning Lisa Coltogirone. Hale called in part-time Judicial Commissioner David Williams to witness the reprimand.

d.  On or about December 22, 2021, Lisa Coltogirone told Stacey Swindell that she was unsure of who she would be recommending for re-appointment as a judicial commissioner. But whoever was recommended, Lisa Coltogirone said "will not be

22

drinking the kool-aid in the office".

e.  On February 4, 2022, Lisa Coltogirone was given a draft of an amended complaint from her attorney in the case of *Hamblin v Wilson County and Coltogirone*. Upon receiving the draft amended complaint, Lisa Coltogirone confronted Stacey Swindell about being mentioned among the amendments and suggested she should be mad.

f.  Whoever corruptly, or by threats, threatening letter or communication influences, obstructs, or impedes or endeavors to influence, obstruct, or impede the due and proper administration of the law under which any pending proceeding is being had before any department or agency of the United States, including the Equal Employment Opportunity Commission, can be prosecuted for obstruction of justice under 18 U.S.C. §1505 and fined and/or imprisoned up to five years.

## COUNT I
### 42 U.S.C. 1983 - Wilson County
### First Amendment retaliation

80.  Defendant delegated all authority regarding the Judicial Commissioner's Office to Lisa Coltogirone, effectively making her a final decision-maker. The conduct of Lisa Coltogirone in retaliating against judicial commissioners who exercised their rights under the First Amendment to speak about issues of public concern constituted a practice and pattern and de facto policy of Wilson County.

81.  Defendant, through Lisa Coltogirone, deprived Plaintiff of his rights secured by the First Amendment to the U.S. Constitution while acting under color of state law, in part, by

a.  Not recommending Plaintiff for renewal/reappointment to the judicial committee

23

or the county commission;

82. Plaintiff engaged in constitutionally protected speech activity or conduct or acts that were intended to communicate information on matters of public concern and/or were otherwise protected by law.

83. The protected activity and Plaintiff's interest in such activity outweighed the defendant employer's interest in promoting the efficiency of the public service it provided as an employer. In fact, the protected activity exposed an inefficiency in the public service Defendant was supposed to provide.

84. Plaintiff's speech activity or conduct or acts that were intended to communicate information on matters of public concern did not meaningfully interfere with the performance of his duties and did not undermine legitimate goals or the mission of his employer.

85. Defendant took detrimental actions against the plaintiff because of his protected activity through an official with final decision-making authority with respect to personnel matters such as removal of job duties, scheduling, disciplinary actions and other detrimental changes to conditions of his employment, including termination or non-renewal. This official was Defendant Lisa Coltogirone who had final and unreviewable decision-making authority unconstrained by the official policies of superior officials.

86. Plaintiff's speech activity or conduct or acts intended to communicate information was a substantial or motivating factor in Defendant's decision to detrimentally change the conditions of his employment and, ultimately, to terminate his employment by not recommending him for renewal/reappointment.

24

87. Defendant's conduct caused embarrassment, humiliation, and economic damages.

88. Defendant's actions were the proximate or legal cause of the damages sustained by the plaintiff.

## COUNT II
### 42 U.S.C. 1983 - Wilson County
### First Amendment prior restraint

89. Defendant delegated all authority regarding the Judicial Commissioner's Office to Lisa Coltogirone, effectively making her a final decision-maker. The conduct of Lisa Coltogirone in ordering Plaintiff and other judicial commissioners not to speak to anyone else, including elected officials, about job-related matters, including a prohibition against reporting Lisa Coltogirone's own potential misconduct, constituted a practice and pattern and de facto policy of Wilson County.

90. Defendant, in prohibiting Plaintiff, and other judicial commissioners, from communicating with others outside the office, including elected officials, about work-related matters, engaged in prior restraint of Plaintiff's speech.

91. Defendant engaged in prior restraint of Plaintiff's speech before the plaintiff had uttered any speech that could even arguably disrupt the judicial commissioner's office.

92. Any concern that the speech to individuals outside the judicial commissioner's office would disrupt the office or the performance of judicial commissioners would be necessarily speculative because the defendant did not even know the content of the speech before issuing such a broad gag order and could not reasonably predict that out-of-office communications would spill over into the workplace.

93. Defendant's conduct caused embarrassment, humiliation, fear of discipline and economic

damages.

94.     Defendant's actions were the proximate or legal cause of the damages sustained by the plaintiff.

## COUNT III
### 42 U.S.C. 1983 - Wilson County
### Procedural Due Process

95.     Defendant delegated all authority regarding the Judicial Commissioner's Office to Lisa Coltogirone, effectively making her a final decision-maker.

96.     Plaintiff, as a judicial commissioner appointed for a set term of years and whose reappointment is subject to the views, comments and suggestions of the judges of the courts in which the judicial commissioners are appointed to serve, had a Constitutionally protected property interest in his job.

97.     Plaintiff was deprived of his property interest by being non-renewed without the county commission taking into consideration the views, comments and suggestions of the judges of the courts in which the judicial commissioners are appointed to serve.

98.     Defendant's conduct caused embarrassment, humiliation, and economic damages.

99.     Defendant's actions were the proximate or legal cause of the damages sustained by the plaintiff.

## COUNT IV
### PEPFA - Wilson County

100.    Plaintiff was an employee of Wilson County, Tennessee. Wilson County was his employer.

101.    Plaintiff communicated with or intended to communicate with elected officials, including

26

members of the County Commission and the District Attorney's office.

102.    Defendant, through its "director" of Judicial Commissioners, prohibited Plaintiff and other judicial commissioners from communicating with elected public officials for any job-related purpose.

103.    Defendant, through its "director" of Judicial Commissioners, threatened to discipline Plaintiff, and other judicial commissioners, if he or they communicated to others outside of the judicial commissioner's office, including elected public officials. At least one judicial commissioner was reprimanded and disciplined specifically for communicating with an elected official.

104.    Plaintiff 's communication with or intent to communicate with elected and other public officials was a substantial or motivating factor in the adverse action taken by the defendant.

105.    Plaintiff was chilled in communicating with elected and other public officials under threat of discipline.

106.    Defendant disciplined, threatened to discipline, or otherwise discriminated against the plaintiff because of, or in anticipation of, or to deter him from exercising his right to communicate with elected public officials.

107.    Defendant's conduct caused embarrassment, humiliation, fear of discipline, and economic damages.

**COUNT V**
**42 U.S.C. 1983 - Lisa Coltogirone**
**First Amendment retaliation**

108.    Defendant deprived Plaintiff of his rights secured by the First Amendment to the U.S.

Constitution while acting under color of state law in part by

a.  Not recommending Plaintiff for renewal/reappointment;

b.  Filing a complaint with the Tennessee Board of Judicial Conduct regarding statements Plaintiff made to the EEOC.

109. Plaintiff engaged in constitutionally protected speech activity or conduct or acts that were intended to communicate information on matters of public concern and/or were otherwise protected by law.

110. The protected activity and Plaintiff's interest in such activity outweighed the defendant employer's interest in promoting the efficiency of the public service it provided as an employer. In fact, the protected activity exposed an inefficiency in the public service Defendant was supposed to provide.

111. Plaintiff's speech activity or conduct or acts that were intended to communicate information on matters of public concern did not meaningfully interfere with the performance of his duties and did not undermine legitimate goals or the mission of his employer.

112. Plaintiff's speech activity or conduct or acts intended to communicate information was a substantial or motivating factor in Defendant's decision to detrimentally change the conditions of his employment and, ultimately, to not recommend him for renewal/reappointment.

113. Defendant's conduct caused embarrassment, humiliation, and economic damages.

114. Defendant's actions were the proximate or legal cause of the damages sustained by the plaintiff.

28

## COUNT VI
## 42 U.S.C. 1983 - Lisa Coltogirone
## First Amendment prior restraint

115. Defendant, in prohibiting Plaintiff, and other judicial commissioners, from communicating with others outside the office, including elected officials, about work-related matters, engaged in prior restraint of Plaintiff's speech.

116. Defendant engaged in prior restraint of Plaintiff's speech before the plaintiff had uttered any speech that could even arguably disrupt the judicial commissioner's office.

117. Any concern that the speech to individuals outside the judicial commissioner's office would disrupt the office or the performance of judicial commissioners would be necessarily speculative because the defendant did not even know the content of the speech before issuing such a broad gag order and could not reasonably predict that out-of-office communications would spill over into the workplace.

118. Defendant's conduct caused embarrassment, humiliation, and economic damages.

119. Defendant's actions were the proximate or legal cause of the damages sustained by the plaintiff.

## COUNT VII
## Intentional interference with business relationship
## Wilson County, Lisa Coltogirone, Michael Coltogirone, Felicia Hale, Charles Hubner

120. Plaintiff had an existing business relationship and/or customary relationship with specific third parties or a prospective relationship and/or customary relationship with an identifiable class of third persons, that is, other real estate agents and brokers, that would have been of pecuniary value to the plaintiff.

121. Lisa Coltogirone and Felicia Hale, while conspiring to interfere with Plaintiff's real estate

29

business relationships, were acting within the scope of their employment with Wilson County and thus Wilson County is liable as *respondeat superior*.

122. Michael Coltogirone is not a Wilson County employee and therefore was an extra-corporate co-conspirator.

123. The defendants had knowledge of that relationship and not a mere awareness of the plaintiff's business dealings with others in general.

124. The defendants intended to cause the breach or termination of the business relationship;

125. The defendants had an improper motive or used improper means, including the use of fraud, false names, false identities, false pretenses, misrepresentation and deceit.

126. These defendants engaged in a civil conspiracy, each having the intent and knowledge of the other's intent, to accomplish by concert an unlawful purpose, or to accomplish a lawful purpose by unlawful means, which resulted in damage to the plaintiff.

127. As part of the conspiracy, each conspirator is liable for the damages resulting from the wrongful acts of all co-conspirators in carrying out the common scheme.

128. Defendants' conduct caused embarrassment, humiliation, and economic damages.

129. Defendants' actions were the proximate or legal cause of the damages sustained by the plaintiff.

## COUNT VIII
## Title VII retaliation - Wilson County

130. Plaintiff engaged in activity protected under Title VII, that is, he participated in an internal investigation ordered by Defendant Wilson County and he filed a charge of discrimination with the EEOC.

30

131.   Wilson County knew that Plaintiff exercised his protected rights.

132.   A materially adverse action was subsequently taken against Plaintiff such that it might deter a reasonable employee from complaining about discrimination. That is, among other actions,

  a.   Plaintiff was put on the midnight shift schedule and not allowed to swap with other judicial commissioners who wanted that schedule;

  b.   Lisa Coltogirone, Michael Coltogirone, Felicia Hale, and Charles Hubner, conspired together to interfere with Plaintiff's real estate business;

  c.   Plaintiff was not recommended for renewal/reappointment by Lisa Coltogirone, a position he was exceptionally qualified for;

  d.   County Commissioners acquiesced in Lisa Coltogirone's "recommendation" despite knowing that Lisa Coltogirone was the subject of the EEOC complaint;

  e.   Lisa Coltogirone filed an ethical complaint with the Tennessee Board of Judicial Conduct for statements made to the EEOC.

133.   Plaintiff's protected activity was the but-for cause of the materially adverse action.

134.   Defendant's conduct caused embarrassment, humiliation, and economic damages.

135.   Defendant's actions were the proximate or legal cause of the damages sustained by the plaintiff.

## COUNT IX
### THRA retaliation - Wilson County

136.   Plaintiff engaged in protected activity under the Tennessee Human Rights Act.

137.   Wilson County knew Plaintiff engaged in protected activity.

31

138. Wilson County took materially adverse actions against the plaintiff through its "Director" of Judicial Commissioners who was given final decision-making authority.

139. There was a causal connection between the protected activity and the adverse actions.

140. Defendant's conduct caused embarrassment, humiliation, and economic damages.

**COUNT X**
**42 U.S.C. 1983 - Conspiracy to retaliate**
**Wilson County, Lisa Coltogirone, Michael Coltogirone, Felicia Hale, Charles Hubner**

141. Defendant Wilson County delegated all authority regarding the Judicial Commissioner's Office to Lisa Coltogirone, effectively making her a final decision-maker. The conduct of Lisa Coltogirone in retaliating against judicial commissioners who exercised their rights constituted a practice and pattern and de facto policy of Wilson County.

142. Defendants conspired, agreed, and devised a plan to retaliate against the plaintiff for having participated in the investigation of a sexual harassment complaint and for filing a Charge of Discrimination with the EEOC. That is, among other things, they devised a plan to retaliate against him by tortiously and unlawfully conspiring to commit trespass by fraud and using him as a buyer's agent for a fake buyer and thereby interfere with his business relationship with another real estate agent (the listing agent) and jeopardize his standing with his broker agent.

143. Defendants shared a conspiratorial objective to deprive the plaintiff of his rights against retaliation for participating in the investigation of a sexual harassment complaint and for filing a Charge of Discrimination with the EEOC.

144. Defendants, after conspiring, agreeing, and devising this plan, committed an overt act, including but not limited to, the following:

32

a. Felicia Hale sent a text to a person across the street from the property for sale to ask for permission to park in what she thought was the person's parent's driveway so that she and Michael Coltogirone could "Lol... watch[] someone across the street".

b. Felicia Hale, during her regular working hours and acting in furtherance of Wilson County, and Michael Coltogirone joined up and drove to that location in the silver pickup truck of Michael Coltogirone;

c. Michael Coltogirone climbed a tree across the street from the sale property so he could surreptitiously film Plaintiff showing the property to the fake buyer while Felicia Hale remained in the truck and used binoculars to spy on the sale property.

145. Defendants' conduct caused embarrassment, humiliation, and economic damages.

146. Defendants' actions were the proximate or legal cause of the damages sustained by the plaintiff.

## COUNT XI
### 42 U.S.C. 1983 - Conspiracy to violate Equal Protection
**Wilson County, Lisa Coltogirone, Michael Coltogirone, Felicia Hale, Charles Hubner**

147. Defendant delegated all authority regarding the Judicial Commissioner's Office to Lisa Coltogirone, effectively making her a final decision-maker. The conduct of Lisa Coltogirone in retaliating against judicial commissioners who exercised their rights constituted a practice and pattern and de facto policy of Wilson County.

148. Defendants conspired, agreed, and devised a plan to retaliate against the plaintiff for having participated in the investigation of a sexual harassment complaint and for filing a Charge of Discrimination with the EEOC. That is, among other things, they devised a

33

plan to retaliate against him by tortiously and unlawfully conspiring to commit trespass by fraud and using him as a buyer's agent for a fake buyer and thereby interfere with his business relationship with another real estate agent (the listing agent) and jeopardize his standing with his broker agent.

149. Defendants shared a conspiratorial objective to deprive the plaintiff of his rights against retaliation for participating in the investigation of a sexual harassment complaint and for filing a Charge of Discrimination with the EEOC.

150. Defendants, after conspiring, agreeing, and devising this plan, committed an overt act, including but not limited to, the following:

    a.    Felicia Hale sent a text to a person across the street from the property for sale to ask for permission to park in what they thought was the person's parent's driveway so that she and Michael Coltogirone could "Lol... watch[] someone across the street";

    b.    Felicia Hale, during her regular working hours and acting in furtherance of Wilson County, and Michael Coltogirone joined up and drove to that location in the silver pickup truck of Michael Coltogirone;

    c.    Michael Coltogirone climbed a tree across the street from the sale property so he could surreptitiously film Plaintiff showing the property to the fake buyer while Felicia Hale remained in the truck and used binoculars to spy on the sale property.

151. Defendants conspired against the plaintiff in violation of his Equal Protection rights under the 14th Amendment to the U.S. Constitution. Other judicial commissioners, including those judicial commissioners who were removed from the judicial commissioner work

schedule due to illness and who did not participate in sexual harassment investigations or who did not file charges of discrimination with the EEOC, were not subjected to this type of conspiracy.

152. Defendants' conduct caused embarrassment, humiliation, and economic damages.

153. Defendants' actions were the proximate or legal cause of the damages sustained by the plaintiff.

Therefore, Plaintiff asks for the following:

1. A jury to try this cause;

2. Compensatory damages against Wilson County to be determined by a jury;

3. Compensatory and punitive damages against all other defendants to be determined by a jury;

4. Back pay and front pay, including loss of retirement;

5. Attorney's fees and cost of the litigation;

6. Such other relief as this Court deems proper.

Respectfully submitted,

 /s/ Jerry Gonzalez
Jerry Gonzalez (18379)
Attorney for Plaintiff
8000 Highway 99
No. 456
Rockvale TN 37153
615-360-6060
jgonzalez@jglaw.net